**IT IS ORDERED as set forth below:**



Date: June 3, 2019

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 16-67309 |
| | ) | |
| ANGELA YVONNE HOLYFIELD, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

**ORDER ON DEBTOR'S MOTION TO HOLD LUANNE M. BONNIE
IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY**

This case is replete with stay violations. The question is what this Court should do about them – specifically whether two acts taken by Luanne Bonnie as administratrix of the estate of the Debtor's mother, constituted willful violations of the stay for which the Debtor is entitled to damages.

The Debtor's Motion to Hold Luanne M. Bonnie in Contempt for Violation of the Automatic Stay [Docket No. 100] came before the Court for hearing after notice on April 29, 2019. Scott Riddle appeared on behalf of Ms. Bonnie and Ralph Goldberg appeared on behalf of the Debtor. The Court heard the testimony of the Debtor and Ms. Bonnie and received several exhibits into evidence. Both parties have filed post-hearing briefs.

1

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core matter under 28 U.S.C. § 157(b)(2).

## FINDINGS OF FACT

Most of the facts are undisputed. The Debtor's mother owned a home at 342 Clifford Avenue in Georgia ("Property") when she died intestate on June 5, 2000. At the time of her mother's death, the Debtor was an heir, together with her sister Gwendolyn Turner and a third sister (or the children thereof). The home on Clifford Avenue was encumbered by a deed to secure debt ("DSD") held by Wells Fargo. The Debtor has made some payments on the debt secured by the DSD since 2000. Apparently, no other heirs have made payments on the debt secured by the DSD.

The Debtor filed this bankruptcy petition on September 30, 2016 and listed the Property as an asset, with a value of $99,000. The Debtor did not, however, disclose the interests of other heirs in the Property. The Debtor also listed Wells Fargo as a creditor in the amount of $70,000. This is the Debtor's fifth bankruptcy case since 2000. She received a discharge in 2012 and in 2014, each upon conclusion of a Chapter 13 plan.

On September 29, 2017, Shimika Rhodes (the Debtor's niece) filed a Petition for Letters of Administration in the DeKalb Probate Court requesting that she be appointed the representative of the estate of the Debtor's mother. On October 23, 2017, Gwendolyn Turner (the Debtor's sister) and Sonya Rhodes (the Debtor's niece) filed Caveats. On January 9, 2018, the Debtor filed a Caveat. On September 17, 2018, the Debtor filed her own Petition for Letters of Administration seeking to be appointed the representative of her mother's estate. On September 18, 2018, a hearing was held in Probate Court on the Petitions and Caveats. The Debtor was represented at the hearing by Laurene Cuvillier, the law partner of the Debtor's bankruptcy attorney. At the hearing, it was made known to the judge that the Debtor was a debtor in bankruptcy. Ms. Cuvillier

2

argued, among other things, that the automatic stay protected the Property so an administrator was not needed for that purpose.[1]

On September 20, 2018, Ms. Cullivier submitted a post-hearing brief to the Probate Court. In it, she referenced the Debtor's bankruptcy case, but did not raise the automatic stay as a bar to the continuation of the Probate proceedings. Instead, she lobbied for the Debtor to be the administrator and argued that a failure to appoint the Debtor administrator based on the Debtor's bankruptcies was prohibited discrimination under 11 U.S.C. § 525.

The Probate Court entered an order on October 24, 2018 appointing Ms. Bonnie the administrator of the Debtor's mother's estate. On November 8, 2018, Ms. Bonnie sent a letter to all the heirs introducing herself and sent a letter specifically to the Debtor terminating the Debtor's "tenancy of the Property", and notifying her that she had until 9:00 a.m. on Monday, January 7, 2019 to vacate the Property and deliver the keys to Ms Bonnie. The letter also stated, "Failure to comply fully with any of the terms of this demand will result in an immediate eviction proceeding against you and any other occupants of the property." In response, the Debtor's bankruptcy counsel sent a letter to Ms. Bonnie on November 27, 2018 notifying her that the Debtor was a debtor in a current bankruptcy case and providing her with the case number. The Debtor's counsel also advised Ms. Bonnie, "Your action of sending such a letter to an individual in bankruptcy violates the automatic stay of bankruptcy, and subjects you to an action for contempt. Additionally, your action to force her to vacate said residence and your proposed sale of such residence, also violate the automatic stay of bankruptcy." On December 19, 2018, Ms. Bonnie responded to the Debtor's counsel disagreeing with counsel's assessment of the situation. Ms. Bonnie asserted that the Debtor owned no interest in the Property and did not owe any obligation

---

[1] On January 11, 2019, Wells Fargo filed a Motion for Relief from Stay in this Court to foreclose on the Property.

3

to Wells Fargo. It was Ms. Bonnie's position that upon her appointment, the Property vested in the probate estate. She stated, "Thus, your letter dated November 27, 2018, informing me that my pending eviction violates the automatic stay, was wrongful, because no fraction of the Property is property of your client's bankruptcy estate. Because the Property is not part of the bankruptcy estate, my eviction of your client cannot violate the automatic stay." Ms. Bonnie went further though and stated the following:

> Please be advised and please advise your client, that I am seeking authority from the DeKalb County Probate Court to hire a bankruptcy attorney to make the Bankruptcy Court aware that your client holds no ownership interest in the Property and no liability on the Mortgage. After the Bankruptcy Court is aware that neither the Property, nor the Mortgage is part of the bankruptcy estate, I will proceed with administering the Estate.
>
> Please also be advised, and please advise your client, that upon distribution of the Estate, I will seek authority from the Probate Court to assess the cost of dealing with your client's bankruptcy case, against her. If your client would like to avoid the expense of exposing her bankruptcy issues please have her immediately turnover possession of 342 Clifford Avenue, Atlanta, Georgia, by delivering the keys to my office.

On January 28, 2019, Ms. Bonnie filed her first Motion for Relief from Stay and Motion to Dismiss [Docket No. 93]. In it, Ms. Bonnie alleged that the Debtor was "in essence, a squatter, or at best a tenant at will". She also alleged the Debtor was "perpetuating a fraud upon the Court" by holding herself out to be the sole owner and the mortgagee (sic). This motion was withdrawn and then refiled with the proper movant identified on February 8, 2019 [Docket No. 99]. The Debtor's Motion followed. On April 3, 2019, this Court entered an order granting relief from the stay to Ms. Bonnie to continue the probate of the Debtor's mother's estate [Docket No. 111]. On April 19, 2019, the Court entered an order granting relief from the stay to Wells Fargo to commence foreclosure proceedings against the Property [Docket No. 114].

**CONCLUSIONS OF LAW**

When a bankruptcy petition is filed, an automatic stay immediately becomes effective and operates as a self-executing injunction against a variety of acts against the debtor and property of the estate. 11 U.S.C. § 362. Specifically, the filing of the bankruptcy case operates as a stay of

> (1) the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other actual proceeding against the debtor that was or could have been commenced before the commencement of the case under this title …
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. § 362(a). The language in Section 362 is very broad and is in the disjunctive, meaning that any of the provisions may apply to a particular act by a creditor or a third party. As one court noted, "This provision is about as clear as one could reasonably want . . . Simply stated, it creates a restraint and injunction against <u>any</u> judicial proceeding against a debtor in bankruptcy." <u>In re Panayotoff</u>, 140 B.R. 509, 511 (Bankr. D. Minn. 1992) (emphasis in original); <u>see also</u> <u>In re Steward</u>, 338 B.R. 654, 659 (Bankr. D.N.J. 2006).

In this case, three possible stay violations have occurred: the commencement and continuation of the probate proceeding, Ms. Bonnie's letter to the Debtor of November 8, 2018 demanding possession of the Property, and Ms. Bonnie's letter of December 19, 2018 addressed to Mr. Goldberg.

The commencement and continuation of the probate proceeding pursuant to which Ms. Bonnie was appointed administrator violated the automatic stay. Under Georgia law, when the Debtor's mother died intestate, the title to her real property automatically vested in the heirs at law which undisputedly included the Debtor. O.C.GA. § 53-2-7. At the time the Debtor filed her

5

bankruptcy case in 2016, she therefore held an interest in the Property. Moreover, her interest as an heir, whatever that may be, was also property of the estate. See 11 U.S.C. § 541; see also Schieffler v. Pulaski Bank & Trust Company (In re Molitor), 183 B.R. 547, 553 (Bankr. E.D. Ark. 1995) (rights of the debtor in the probate estate became property of the estate). Because under Georgia law, the appointment of an administrator divests the heirs of their ownership interests directly in the Property (O.C.G.A. § 53-2-7(c)), the petition for the appointment of an administrator was an act to obtain possession of property of the estate in violation of 11 U.S.C. § 362(a)(3). Moreover, because the probate case was commenced against the Debtor, among others, as an heir of the estate, it was the commencement of a judicial proceeding against the Debtor which could have been filed before the petition, and was in violation of 11 U.S.C. § 362(a)(1).

Numerous courts have held that the continuation of a probate proceeding violates the automatic stay. In Molitor, the court held that the stay was violated by the administrator pursuing the approval of an inventory in the estate of the debtor's mother. As the court stated, "The probate proceeding, insofar as it concerned the Debtor or any property the Debtor might be entitled to, became subject to the automatic stay the moment the bankruptcy petition was filed, and all actions should have abated in the probate proceeding until relief from the automatic stay was granted." 183 B.R. at 553. Similarly, in Steward, the court held that a proceeding to remove the debtor as executor of a probate estate violated the automatic stay. The court rejected the argument of the moving party that removing the debtor as executor did not diminish any rights, interests or property of the debtor and therefore did not violate the automatic stay. The court stated, "Movants cannot bypass seeking relief from the stay simply because they believe relief from the stay is appropriate." 338 B.R. at 660. Likewise, in Panayotoff, the court held,

> It is crucial that the language of the two phrases which qualify the term 'judicial, administrative, or other action or proceeding against the debtor,' is in the disjunctive.

6

> This establishes that the scope of this stay is not limited to proceedings for a monetary recovery against the debtor. Further, there is no qualifying language which limits the stay to judicial actions or proceedings brought against an individual in her personal capacity, or to those brought by a creditor against her in her status as the obligor in a debtor-creditor relationship. Section 362(a)(1), then, stays judicial proceedings brought against a debtor solely in the debtor's capacity as personal representative of a probate estate."

140 B.R. at 511-512. It is therefore clear that the commencement of the probate action and the continuation of the probate action were in violation of the automatic stay. This stay violation is not before the Court in the Motion.

The next possible stay violation is Ms. Bonnie's letter to the Debtor dated November 8, 2018 in which she demands possession of the Property. Notwithstanding Ms. Bonnie's argument in her letter to Mr. Goldberg of December 19, 2018, a demand for possession of property is a violation of the automatic stay. Again, 11 U.S.C. § 362 prohibits any act not only to obtain possession of property of the estate but to obtain possession of property from the estate. 11 U.S.C. § 362(a)(3). The Debtor was in possession of the Property when she filed the bankruptcy case and remained in possession of the Property throughout the case. Demanding possession was a violation of the stay. This Court has previously held that the weight of authority holds that a "mere possessory interest in real property without any accompanying legal interest is sufficient to trigger protection of the automatic stay." Cox v. Klein (In re Cox), Case No. 13-70818-WLH, Adv. Proc. No. 15-5063, 2015 WL 1933482 at *2 (Bankr. N.D. Ga. Apr. 16, 2015) (citing In re 48th St. Steakhouse, Inc., 835 F. 2d 427, 430 (2nd Cir. 1987); In re Convenient Food Mart No. 144, Inc., 968 F. 2d 592, 594 (6th Cir. 1992); In re Atlanta Business & Cmty. Corp., 901 F. 2d 325, 328 (3rd Cir. 1990); In re Blalock, 301 B.R. 443, 445 (Bankr. E.D. Pa. 2003); In re Kennedy, 39 B.R. 995, 997 (C.D. Cal. 1984)). See also Pullen v. Harris (In re Pullen), Case No. 07-65415-MFM, 2008 WL 7874794 at *1 (Bankr. N.D. Ga. Aug. 7, 2008) (explaining the automatic stay protects even a

bare possessory interest) (citing Brown v. Chestnut, 422 F.3d 298 (5th Cir. 2005). So, Ms. Bonnie's letter to the Debtor demanding possession of the Property violated the automatic stay.

The final possible stay violation is Ms. Bonnie's letter to Mr. Goldberg of December 19, 2018. Ms. Bonnie argues this letter cannot, as a matter of law, be a stay violation because the letter was not addressed to the Debtor. Her argument is incorrect. In the Pullen case cited above, the stay violation was an email to the debtor's attorney which stated, "I suggest that you inform [Debtors] of this matter so they will not be shocked when Cain [Harris] arrives with the police and a locksmith." 2008 WL 7874794 at *1. A letter to the debtor's attorney was also a stay violation in Collier v. Hill (In re Collier), 410 B.R. 464 (Bankr. E.D. Tex. 2009). There, the creditor's attorney sent a letter to the debtor's attorney stating, "Please accept this letter as a formal demand for payment of two outstanding debts owed by your client Brad Collier . . . Your client is aware of these two debts and had repeatedly promised to make good on them to my clients. To date he has failed to do so. Therefore, if payment in full is not received by July 25, 2008, I will have no choice but to file suit on behalf of my clients. Furthermore, they will be seeking costs, attorney's fees and interest as allowable under Texas law for contract claims and suits on sworn accounts." Id. at 470. The mere fact that the letter was sent to the Debtor's attorney does not mean it cannot be a stay violation. Instead, the question is the nature and tone of the letter. A simple inquiry as to a debtor's post-petition intentions may not violate the stay. See In re Squire, Case No. 13-62070, 2014 WL 1271311 at *3 (Bankr. N.D.N.Y. Mar. 26, 2014); Murray v. Great Valley Savings Assoc. (In re Murray), 89 B.R. 533 (Bankr. E.D. Pa. 1988). In Murray, the court looked at the nature of the information being communicated and the form of the communication to determine if a written communication violated the stay. Id. at 535. The court examined the facial legitimacy

8

of the letter, in other words whether the position stated or demand made has some basis in the law, and whether the letter was "mildly" worded. Id. at 535-36.

After considering the evidence and reviewing the letter at issue, the Court concludes the letter from Ms. Bonnie to Mr. Goldberg dated December 19, 2018 is a violation of the automatic stay. A portion of the letter could be construed as a difference of opinion as to whether the stay applies. Such a difference of opinion should have led Ms. Bonnie to the bankruptcy court for direction. Steward, 338 B.R. at 662. Ms. Bonnie, however, clearly intended the communication to be directed to the Debtor. She states in more than one place, "Please be advised, and please advise your client". Moreover, the final sentence stating, "If your client would like to avoid the expense of exposing her bankruptcy issues, please have her immediately turn over possession of" the Property is a continued attempt to obtain possession of property from the estate. Her letter is not mildly worded but is an unveiled threat to the Debtor should she not return the Property.

Once the Court has determined that a stay violation has occurred, the next question for the Court is the appropriate remedy, if any. The Bankruptcy Code provides the appropriate remedy in 11 U.S.C. § 362(k) which states, "An individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances may recover punitive damages." It has been held that contempt is not the proper remedy for a violation of the automatic stay since Section 362(k) provides debtors with an express right of action to address willful stay violations. See In re Witham, 579 B.R. 787, 796 (Bankr. E.D. Ky. 2017).

In the Eleventh Circuit, a "willful violation" of the automatic stay occurs when the creditor "(1) Knew the automatic stay was invoked and (2) intended the actions which violated the stay." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996). The Debtor has to prove a willful

9

stay violation by a preponderance of the evidence. Spinner v. Cash In A Hurry, LLC (In re Spinner), 398 B.R. 84, 94-95 (Bankr. N.D. Ga. 2008). However, the Debtor need only prove that the creditor knew of the stay and intended the action, not that the creditor intended that the action would violate the stay. Jove, 92 F.3d at 1555 (citing Price v. U.S., 42 F.3d 1068,1071 (7th Cir. 1994)); Citizens Bank v. Strumpf , 37 F.3d 155, 159 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 16 (1995); Johnston Envtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1993); Budget Service Co. v. Better Homes of Va., Inc., 804 F. 2d 289, 292-93 (4th Cir. 1986); In re Beckett, 455 B.R. 9, 14 (Bankr. D. Mass. 2011) (citing In re Rosa, 313 B.R. 1, 7 (Bankr. D.Mass. 2004)). As explained by the court in In re Roche:

> [P]roof of the defendant's intent to violate the stay is not required, only the defendant's intent to act must be shown. This intent to act can be shown where the defendant, after notice, fails to affirmatively halt actions that will violate the stay. A willful, violation of the automatic stay may be found if the creditor knew of the automatic stay and its actions were intentional.

Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 622-23 (Bankr. N.D. Ga. 2005) (internal citations omitted).

There is no doubt the letter sent by Ms. Bonnie to Mr. Goldberg was willful. By the time the letter was sent, Ms. Bonnie had actual knowledge of the bankruptcy filing and acknowledged it in her letter to Mr. Goldberg. Nevertheless, she sent the letter. Although Ms. Bonnie did not believe subjectively that the automatic stay applied, "A good faith belief by the defendant that it had the right to take such actions is irrelevant to whether a defendant acted willfully." Steward, 338 B.R. at 661. Ms. Bonnie acted much like the defendant's attorney in the Collier case who did not believe the automatic stay applied because his clients' debt was not scheduled. This position was rejected by the court and is rejected here. Ms. Bonnie's violation of the automatic stay in sending Mr. Goldberg the letter of December 19, 2018 was willful.

10

The analysis is different, though, with respect to Ms. Bonnie's letter to the Debtor of November 8, 2018. It is undisputed that Ms. Bonnie did not have actual knowledge of the Debtor's pending bankruptcy case. She testified she did not review the pleadings in the probate case and therefore did not see references to the Debtor's pending bankruptcy case that may have been contained in some of them. She did not ask anyone about any pending bankruptcy cases. The Debtor points to the order of the Probate Court appointing Ms. Bonnie the administrator where the order references the Debtor has filed two bankruptcy cases. While it is possible this might have alerted the administrator to see if a bankruptcy case was pending, the order of the Probate Court does not state the Debtor is <u>presently</u> in bankruptcy, only that she has filed cases. Thus, the Court cannot hold Ms. Bonnie had knowledge of the pending bankruptcy case.

The Debtor cites to several cases for the proposition that notice of the filing of a petition "need not be a formal notice of the commencement of a case where the creditor has sufficient facts which would cause a reasonably prudent person to make further inquiry." <u>In re Bragg</u>, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985); <u>Edwards v. Pullman Trailmobile (In re Edwards)</u>, 5 B.R. 663, 665 (Bankr. M.D. Ala. 1980). In those cases, however, and other cases reviewed by the Court, the notice imputed to the creditor was given to an agent of the creditor. In the <u>Bragg</u> case notice was given to the agent for repossession which the court deemed to be an agent of the lender. In <u>Edwards</u>, notice was given to the creditor's lawyer. In other instances, the courts have imputed the knowledge of an individual employee to the company as a whole. <u>See</u> <u>Witham</u>, 579 B.R. at 793 (Debtor spoke with store manager and corporate office such that company had notice of bankruptcy). Those are not the facts of this case, however. The pleadings filed in the Probate Court do not on their face provide notice of a pending bankruptcy case. The Debtor never filed a notice of bankruptcy or a notice of stay. Had she done so, perhaps the outcome would be different.

The only way Ms. Bonnie would have known of the bankruptcy filing was if she had actually read the contents of every pleading. Further, the other parties to the probate case, and even the Probate Court judge who were told of the Debtor's bankruptcy case are not agents of Ms. Bonnie. Therefore, the Court does not impute to Ms. Bonnie the knowledge of the heirs or even the Probate Court judge of the pending bankruptcy case.[2]

Having established that Ms. Bonnie willfully violated the automatic stay, the remaining question is whether the Debtor has been injured and, if so, the damages to be recovered. Under Section 362(k)(1), "an individual injured" by a willful violation of the stay shall recover actual damages and may recover punitive damages under appropriate circumstances. As the party seeking damages, the Debtor bears the burden of proof on that issue. Roche, 361 B.R. at 624.

Actual damages are defined as "real, substantial and just damages or the amount awarded to a complainant in compensation for [her] actual and real loss or injury, as opposed to nominal damages and punitive damages." Id. (citing McMillian v. FDIC, 81 F.3d 1041, 1054 (11th Cir. 1996). "Actual damages must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." Castillo v. Three Aces Auto Sales, (In re Castillo), 456 B.R. 719, 725 (Bankr. N.D. Ga. 2011). Where actual damages are de minimis, the Court may limit damages to attorney's fees. Erbesfield v. Gavrin (In re Erbesfield), Case No. 14-58377-BEM, Adv. Proc. No. 15-5280-BEM, 2016 WL 7388516 at *2 (Bankr. N.D. Ga. Sept. 22, 2016.). See also Randall v. Doctors and Merchants Credit Bureau Inc. (In re Randall), Nos. 89-10845, 89-1035, 1990 WL 10007394 at *2 (Bankr. S.D. Ga. June 21, 1990).

---

[2] The Court notes also that since the Debtor actually participated in the probate proceeding, filing her own petition for the appointment of an administrator and never seeking to have the proceedings stopped, a reasonable person may have been led to believe there was no reason why the matter could not continue.

The Debtor alleged she was injured emotionally and through the incurrence of attorney's fees.  Damages for emotional distress are permitted in the Eleventh Circuit.  To recover such, though, the Debtor must "(1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014).  In this case, the Debtor did not carry her burden of proving damages for emotional distress.  The Debtor testified that she was upset when she received the first letter from Ms. Bonnie ordering her to vacate the premises. All of her testimony regarding her lack of eating and listlessness revolved around that particular notice.  The evidence did not support specific emotional distress associated with the letter sent by Ms. Bonnie to Mr. Goldberg in December.  The Court recognizes that the Debtor was and remains distressed to a certain extent because of the administration of her mother's estate and the disagreement among the family.  However, to recover damages for emotional distress for a stay violation, the damages must be caused by the willful violation of the stay which in this case is the letter sent by Ms. Bonnie to Mr. Goldberg.  Since the Debtor did not carry her burden of establishing emotional distress damages caused by the stay violation, she cannot recover such damages.

Some courts question whether attorney's fees can be awarded where, as here, no other compensatory damages are awarded.  Compare Garnier v. Garnier (In re Garnier), 557 B.R. 349 (Bankr. M.D. Pa. 2016) (attorney's fees alone are not considered "actual damages" and should not be awarded for a violation of the automatic stay) (citing cases); In re Sturman, Case No. 10-civ-6725(RJS), 2011 WL 4472412 at *3 (S.D.N.Y. Sept. 27, 2011) (citing cases); Lichtenstein v. Cohen & Slamowitz, LLP (In re Lichtenstein), Bankr. Case No. 07-B-36617(CJM), No. 08-civ-0261(WCC), 2009 WL 874198 at *2 (S.D.N.Y. Mar. 31, 2009) ("Courts are reluctant to award

attorney's fees where such fees are ... the debtor's only damages.") (citation omitted); Micro Marketing Int'l Inc. v. Robec Inc., (In re Micro Marketing Int'l, Inc.,) 150 B.R. 573, 575 (Bankr. M.D. Pa. 1992) (citing Whitt v. Philadelphia Housing Authority (In re Whitt), 79 B.R. 611 (Bankr. E.D. Pa. 1987) (attorney's fees are only allowed "to embellish actual damages")), with In re Voll, 512 B.R. 132 (Bankr. N.D.N.Y. 2014) (debtors entitled to reasonable attorney's fees despite having failed to show emotional distress); In re Burkart Sr. d/b/a Burkart Automotive, Case No. 08-61077, 2010 WL 502945 at *6 (Bankr. N.D.N.Y. Feb. 9, 2010) (same and noting that such damage award is only permitted "provided the circumstances do not point out an inclination for excessive litigiousness"); In re Skeen, 248 B.R. 312 (Bankr. E.D. Tenn. 2000) (attorney fees can be recovered if legal action is required.); Singley v. American General Finance (In re Singley), 233 B.R. 170, 174-5 (Bankr. S.D. Ga. 1999); In re Robinson, 228 B.R. 75, 85 (Bankr. E.D. N.Y. 1998).  This Court agrees with the cases that permit the recovery of attorney's fees as actual damages if they were reasonably and necessarily incurred as a result of the willful stay violation.

The leading case denying attorney's fees when there are no other compensatory damages is Hutchings v. Ocwen Federal Bank (In re Hutchings), 348 B.R. 847 (Bankr. N.D. Ala. 2006).  It is frequently cited for the proposition that attorney's fees are never allowed if another injury does not exist.  But the District Court in Parker v. Credit Central South, Inc., No. 1:14-cv-311-WKW, 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015), explained that the Hutchings case was not so broad.  Rather, it noted the debtor in the Hutchings case did not need to maintain the litigation "to force [the defendant] to desist from further violating the stay, or to prevent [the defendant] from again violating the stay, or to undo the effects of [defendant's] stay violations, or to recover compensatory damages that he actually incurred as a result of those violations prior to the institution of the law suit . . . " 2015 WL 1042793 at *6.  The District Court decision was affirmed

14

by the Eleventh Circuit thereby permitting attorney's fees and punitive damages to be awarded even in the absence of other compensatory damages. Parker v. Credit Central South, Inc., (In re Parker) 634 Fed. Appx. 770, 773 (11th Cir. 2015). The bankruptcy appellate panel of the First Circuit analyzed the right to recover attorney's fees under 11 U.S.C. 362(k) similarly. The Court rejected the defendant's argument that the debtor must suffer some damage other than attorney's fees before attorney's fees could be recovered. The court stated that this

> argument implicitly characterizes attorney's fees as something other than actual damages … This interpretation ignores the plain language of the statute which expressly states that attorney's fees are actual damages under 11 U.SC. 362 (k)(1) … Moreover, it fails to recognize that ending a stay violation, such as the one here, often requires intervention by legal counsel who should not be expected to perform services without payment.

Duby v. USA (In re Duby), 451 B.R. 664, 674 (1st Cir. B.A.P. 2011). This position is recognized in the Eleventh Circuit in Erbesfield, 2016 WL 7388516 at *2, and Vaughn v. Central Mississippi Credit Corp., (In re Vaughn), Case No. 10-81836-WRS, Adv. Proc. No. 14-8010-WRS, 2016 WL 836968 at *3 (Bankr. M.D. Ala. Mar. 3, 2016). The Eleventh Circuit has held further that such attorney's fees include fees incurred in bringing the action to recover damages for the stay violation. Mantiply v. Horne (In re Horne), 876 F.3d 1076 (11th Cir. 2017).

The Court concludes here that litigation against Ms. Bonnie was reasonably necessary. Mr. Goldberg responded to Ms. Bonnie's initial letter attempting to dispossess the Debtor with information regarding the Debtor's bankruptcy filing. Rather than responding with an apology or simply an acknowledgment that she would obtain stay relief, Ms. Bonnie sent the letter of December 19, 2018 further threatening the Debtor and attempting to have the Debtor removed from the Property without pursuing the required bankruptcy procedures. Additional work was therefore required by the Debtor's counsel to ensure that the proper procedures were followed. Even the Motion for Relief from Stay filed by Ms. Bonnie mischaracterized the Debtor's actions

15

and the bankruptcy law. It called the Debtor a squatter, when she was the only heir who had attempted to pay the mortgage in 19 years. Ms. Bonnie alleged that the Debtor had committed fraud on the Court by scheduling the Property and the Wells Fargo debt, but the schedules were correct.[3] Given Ms. Bonnie's continued aggression towards the Debtor and her refusal to acknowledge bankruptcy law, the Debtor's counsel was required to take some action and the Debtor was therefore injured by the attorney's fees that were incurred by counsel.

In determining the appropriate amount of attorney's fees, the Court "must review critically the requested fees to ensure that the court is not 'rewarding an excessively litigious approach' to the prosecution of stay violations . . . The court must balance two important guiding policies. On the one hand, the court must discourage willful violations of the stay. On the other, the court must avoid encouraging debtor's counsel from incurring substantial fees 'simply because those fees will be shifted to adversaries.'" Voll, 512 B.R. at 141. Not only must the fees be reasonable, but they should bear a reasonable relationship to the amount in controversy. Witham, 579 B.R. at 794. As stated in the Erbesfield case, "When the harm from the stay violation has a de minimis impact on plaintiff, damages under Section 362(k) may be limited to reasonable attorney's fees expended. . . . As a result, attorney's fees must be reasonable as reviewed under the lodestar principles." 2016 WL 7388516 *2; see also Roche v. Pep Boys, Inc. (In re Roche), Case No. 05-63544-MGD, Adv. Proc. No. 05-9040, 2006 WL 6592069, *5 (Bankr. N.D. Ga. Jan. 27, 2006). The lodestar approach to reasonableness starts with the hours reasonably spent and the reasonable hourly charge. See Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The courts also review factors such as time and labor, novelty and difficulty of the issues, the requisite skill, the preclusion of other employment, the customary fee, whether the fee is fixed or

---

[3] See Johnson v. Home State Bank, 501 U.S. 78 (1991), regarding non-recourse debt as a claim.

contingent, the risk incurred, time limitations, the amount involved and the results obtained, the experience, reputation and ability of the counsel, the desirability of the case, the nature and length of the case, and awards obtained in similar cases. Johnson v. Ga. Hwy Exp., 488 F.2d 714 (5th Cir. 1974); In re First Colonial Corp. of Am., 544 F.2d 1291 (5th Cir. 1977); Norman, 836 F.2d 1292; In re Lexington Hearth Lamp & Leisure, LLC, 402 B.R. 135, 141 n.10 (Bankr. M.D. N.C. 2009).

The Debtor's counsel submitted handwritten billing entries and testified generally to the time he spent responding to Ms. Bonnie's actions. He also testified his billing rate was $475.00 - $500.00. No contrary evidence was presented as to the appropriate billing rate; so, the Court will use $475.00 as a fair rate in this case. Mr. Goldberg spent .4 hours responding to Ms. Bonnie's initial letter which the Court has determined was not a willful violation of the stay. Mr. Goldberg spent .3 hours answering Ms. Bonnie's December letter which the Court found to be a stay violation and another .7 hours researching legal action before Ms. Bonnie filed a motion for relief from stay. This time is directly related to the willful stay violation and represents actual damages suffered by the Debtor. The result is damages of $475.00. The remainder of Mr. Goldberg's time from January 30, 2019 through the hearing date was related to his research, preparation and trial of the motion for contempt. This time is 11.45 hours plus his time at the hearing which was 1.5 hours (a total of 12.95 hours). Once Ms. Bonnie filed a motion for relief from stay on January 28, 2019, even if technically in the wrong name, additional action was not required by the Debtor to stop a stay violation or undo a stay violation. Ms. Bonnie had ceased her violation. Since the Debtor was entitled to recover some attorney's fees as compensatory damages, she was entitled to file the Motion and pursue it. But the Court must also consider that the Debtor did not prevail on part of her Motion – she did not show Ms. Bonnie's initial letter was a willful stay violation or

17

prove damages for emotional distress. The fees must also be reasonable compared to the results obtained. The 12.95 hours spent on this litigation is excessive given the issues and results. Instead, the Court finds 4 hours is sufficient in this case to have prepared, filed and tried the litigation. The Debtor's damages are therefore a total of 5 hours of attorney time at $475 per hour or $2,375.00.

The Debtor also seeks an award of punitive damages which may be made under appropriate circumstances under 11 U.S.C 362(k). Such appropriate circumstances arise where the creditor has acted with maliciousness or in bad faith. Castillo, 456 B.R. at 725. For an award of punitive damages, courts consider the following factors: "(1) the nature of the defendant's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor". Roche, 361 B.R. at 624. Although the Court has found that Ms. Bonnie's letter to Mr. Goldberg in December 2018 was a willful violation of the stay, it does not rise to the level of maliciousness or bad faith. The Court notes Ms. Bonnie made little effort to research or understand bankruptcy law (although she did hire an attorney according to Ms. Bonnie who apparently gave her incorrect advice before Mr. Riddle was hired). Nevertheless, her actions were not malicious – just wrong. As discussed above, the nature and extent of the harm to the Debtor here is relatively de minimis. The Court does not believe Ms. Bonnie had improper motives but simply did not understand bankruptcy law or take the time to understand its effect. As the Court stated in Clayton v. King (In re Clayton), 235 B.R. 801 (Bankr. M.D. N.C. 1998), "Defendants actions reflect a lack of diligence, but not vindictiveness or malice. Under these circumstances, an award of punitive damages is not warranted." Id. at 811.

## CONCLUSION

It is therefore ORDERED that Ms. Bonnie willfully violated the automatic stay by sending the letter of December 19, 2018 for which the Debtor suffered damages in amount of $2,375. Ms.

Bonnie is ordered to pay such damages to the Debtor within fifteen (15) days and further orders that such damages not be set off against any share the Debtor may have in the probate estate.

### END OF ORDER ###

## DISTRIBUTION LIST

Angela Yvonne Holyfield
342 Clifford Ave.
Atlanta, GA 30317

Ralph Goldberg
Goldberg & Cuvillier, P.C.
1400 Montreal Road, Suite 100
Tucker, GA 30084

Nancy J. Whaley
Chapter 13 Trustee
303 Peachtree Center Avenue
Suite 120, SunTrust Garden Plaza
Atlanta, GA 30303

Wells Fargo Bank, National Association
c/o Aldridge Pite
5 Piedmont Center
1575 Piedmont Road
Atlanta, GA 30305

Luanne Marie Bonnie
Law Office of Luanne M. Bonnie
201 Swanton Way
Decatur, GA 30030

Lauren Barrett
201 Swanton Way
Decatur, GA 30030

Scott B. Riddle
Law Office of Scott B. Riddle, LLC
Suite 1800 Tower Place
3340 Peachtree Road NE
Atlanta, GA 30326